[Civ. No. 2440.  First Appellate District.—July 18, 1918.]

# CALIFORNIA VEGETABLE UNION (a Corporation), Appellant, v. CROCKER NATIONAL BANK OF SAN FRANCISCO (a National Banking Association), Respondent.

BANKING LAW — PAYMENT OF FORGED CHECKS — NEGLIGENCE OF DEPOSITOR.—A bank is not liable to a depositor for money paid out on forged checks of the cashier of the depositor extending over the period of almost one year where at the end of each month the forged checks, together with the valid checks which had been paid during the month, were returned to the depositor with a statement of account, accompanied with a written request to report discrepancies within fifteen days, and neither the depositor nor its manager ever made any examination of the returned checks and statements until after the cashier had absconded.

ID.—ACTION BY DEPOSITOR—STATUTE OF LIMITATIONS.—The provision of the statute of limitations embodied in subdivision 3 of section 340 of the Code of Civil Procedure that an action against a bank by a depositor for the payment of a forged check must be brought within one year begins to run on presentment and payment of the check, and not upon discovery of forgery.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Walter R. Bacon, for Appellant.

Morrison, Dunne & Brobeck, and J. F. Shuman, for Respondent.

BEASLY, J., *pro tem.*—The California Vegetable Union is a Los Angeles concern having a branch house in San Francisco. Of this branch house during the period in which we are interested H. F. Ardery was the manager and Fred B. Weeks the cashier. During the years 1911 and 1912, and until the end of the year 1913, the plaintiff's branch house in San Francisco was a depositor of the defendant bank. The bank was instructed to pay checks of the plaintiff when signed by Fred B. Weeks, its cashier, and H. F. Ardery, its manager. Weeks became an employee of the plaintiff about the 1st of May, 1912, and continued in that employment until about September 1, 1913, when he "departed these quarters for parts unknown, leaving behind him a trail of forged checks." Between September 18, 1912, and August 28, 1913, Weeks forged the name of Ardery to 136 separate checks, all drawn upon the plaintiff's account in the defendant bank, and aggregating $3,972.65. The bank cashed these checks and charged their amount to plaintiff's account. The checks went through the bank during the various months of this period, and at the end of each month the forged checks paid during that month, together with all the valid checks of the plaintiff, were returned to it, with a list of all checks paid by the bank during that month. The statement accompanying the vouchers also showed the balance to the credit of the plaintiff at the end of the preceding month in each instance, the amounts of all deposits made by it during that month, and separately all checks of plaintiff paid by the bank during the current month, and the balance to the credit of the plaintiff on the defendant's books at the end of the month. These returned checks and these accounts for all of the months from August, 1912, to August, 1913, although regularly received in the course of business at the end of each month during that period, were never examined by the plaintiff, nor by its manager, Ardery, until some time in September, 1913, after Weeks had absconded. During the period in which the forgeries were perpetrated Mr. O'Neal, the president of the plaintiff company, visited the San Fran-

cisco branch on several occasions. He had opportunity to examine the account of the plaintiff in the bank and the returned checks and vouchers, but he never did it. He did, however, see the general statement showing the bank balance of the branch house during that time. Other officials of the company visited the office in San Francisco during the period, but none of them ever examined or paid any attention whatever to the bank balances or to the written statements of the business of the branch with the bank. The plaintiff also employed an auditor in its Los Angeles office, whose duty it was to examine its bank balances and check up month by month the canceled checks and vouchers, but no examination of the checks and vouchers of the branch in San Francisco was ever made by this auditor during that time, nor by anyone performing similar duties.

Mr. O'Neal testified that he knew it to be a custom of banks to furnish to their depositors monthly statements showing their balances, together with the vouchers and canceled checks that had been paid and charged to the account during the month; that he never asked Mr. Ardery if he was having that done in San Francisco; that the checks were made up in blocks of one hundred each; that a check register was kept numbered to correspond with the various numbers of the checks, and ruled so that the purpose of the check is stated in the cash-book or check register; that the regular system of the plaintiff was that every time a check went out the company had a list or memorandum of the check in the office, and that it was possible when the checks came back from the bank at the end of each month to compare them with the check register by numbers and amounts, but this was never done. Had any of these precautions been taken, Weeks' rascality would have been discovered. Weeks was not without considerable skill in these forgeries. The forged signatures of Ardery were strikingly similar to his true signature. Several officers of the defendant bank, all skilled in the detection of forgeries, testified that this was so. Mr. Ebner, the assistant cashier of the bank, who has had thirty-three years' experience in examining signatures on bank checks, said that if the bank were to refuse payment of checks bearing signatures agreeing as closely with the authorized signature in the bank as did the forged signatures of

Ardery, the result would be a refusal of payment of about half the checks presented at banks.

Ardery excused his remissness in paying no attention to the bank account by the curt statement that it was none of his business; that "Weeks was under bond to take care of that end of the work." Generally speaking, the method of these parties in doing business may be said to have corresponded with the customs of metropolitan banks and their depositors in transacting business with each other; and it appears from the evidence that had Mr. O'Neal or Mr. Ardery or their auditor given any attention whatever to the returned checks or to the state of plaintiff's bank balances, they would have known that from the beginning of his transaction of business with the bank Weeks was forging the name of Ardery to checks, cashing them, and converting the money to his own use.

The court gave judgment for the plaintiff for $40, this being based on two checks of $20 each forged and uttered by Weeks prior to his disappearance on the last day of August, and paid by the bank in September about a week after it had been notified by Ardery of the other forgeries.

The principal problem in this case may be stated in the language of the supreme court in the case of *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, [41 L. R. A. (N. S.) 529, 124 Pac. 704], and is as follows: "The claim made by the appellant was that the evidence presented the simple case of a forgery to which is to be applied the well-settled rule that as between the bank and its customer the payment of forged or altered checks by such bank is made at its peril and cannot be charged to the depositor's account. This, of course, is the general rule, and it is applied stringently in cases of simple forgery which involve no other elements than that the purported check of the depositor which was paid was a forged one. But this rule is not applied unqualifiedly. It has its limitations and exceptions, as general rules usually have, and is modified to the extent that when some negligent act of the customer has contributed to the payment by the bank, or the facts in a particular case surrounding the forgery of a check and its presentation and payment are of such character as call for the application thereto of some general principle of law or equity, they may be relied upon by the

bank as an estoppel against the customer precluding him from denying the correctness of the payment."

The exact question here involved has never been squarely decided in the courts of this state so far as we have been able to discover. An instruction in accordance with the contention of the appellant was expressly disapproved in the case of *Janin* v. *London & San Francisco Bank*, 92 Cal. 14, [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100], which instruction read as follows: "In considering the fact that Mr. Janin's bank-book was balanced, and that the bank's statement of the balance was apparently acquiesced in for a considerable length of time, I instruct you that the plaintiff was under no contract with the bank to examine with diligence his returned checks and bank-book. In contemplation of law the book was balanced and the checks returned for the protection of the depositor, not for the protection of the bank, and when Mr. Janin failed to examine it, the only consequence was that the burden of proof shifted. Mr. Janin then became bound to show that the account was wrongly stated. This right he has preserved so long as the claim was not barred by the statute of limitations." "This instruction," says the court in the opinion, "although supported by the authority of *Weisser* v. *Dennison*, 10 N. Y. 68, [61 Am. Dec. 731], is not, in our opinion, entirely correct, and is in conflict with the other instruction referred to. When considered in connection with a portion of another instruction given, to the effect that it 'was sufficient to give notice when the forgery was discovered,' this instruction clearly implied that the plaintiff could not be charged with negligence in not examining his checks within a reasonable time, and that the jury were only to inquire whether he was guilty of unreasonable delay in giving notice after he made the examination and discovered the forgery. This is not the true rule. . . . " The court thus disapproved of the exact contention which counsel for appellant makes in this case, although it must be said that it did not reverse the case for that reason, but on other grounds, holding that in view of the undisputed evidence in the case the giving of this erroneous instruction did not justify a reversal of the judgment. This case and the case of *Otis Elevator Co.* v. *First Nat. Bank, supra,* are the only cases that we have been able to find in this jurisdiction, where this rule has been considered

by the court; and in neither of those cases, it must be admitted, were the facts exactly those of this case; nor did the supreme court in either of those cases finally base its decision upon the propositions of law here involved. However, those cases appeal to us as sound expressions of the legal principle which must apply to the facts of the case at bar; and our conclusion in that respect is in accord with the weight of authority in the United States.

The principle embodied in the case of *Otis Elevator Co.* v. *First Nat. Bank, supra,* and the general rule above stated, find emphatic approval and application in the leading case of *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, [29 L. Ed. 811, 6 Sup. Ct. Rep. 657], in which the court, treating the presentation of a bank-book written up accompanied by the canceled checks of the depositor to him as an account stated, says: "Where a party to a stated account, who is under a duty from the usages of business or otherwise, to examine it within a reasonable time after having an opportunity to do so, and give timely notice of his objections thereto, neglects altogether to make such examination himself or to have it made in good faith by another for him, by reason of which negligence the other party, relying upon the account as having been acquiesced in or approved, has failed to take steps for his protection which he could or would have taken had such notice been given, the depositor is estopped by his conduct to question the conclusiveness of the account stated which arises out of the presentation to him of the account and his failure to examine it and detect the frauds contained therein, and give the bank notice thereof in order that it may protect itself against future frauds of a similar character."

In addition to the rule laid down very clearly after an able and exhaustive discussion in the case of *Leather Manufacturers' Bank* v. *Morgan, supra,* the question has been before the court of appeal of the state of New York in the case of *Morgan* v. *United States Mortgage & Trust Co.,* 208 N. Y. 218, [Ann. Cas. 1914D, 741, L. R. A. 1915D, 741, 101 N. E. 871], in which the legal principle in issue here was approvingly applied and clearly stated in the following language (syllabus): "Primarily a bank may pay and charge to its depositor only such sums as are duly authorized by the latter, and of course a forged check is not authority for such pay-

ment.  It is, however, permitted to a bank to escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments and that it had been free from negligence.  A depositor who sends his pass-book to be written up and receives it back with his paid checks as vouchers is bound under certain circumstances to examine the pass-book and vouchers, and report to the bank without unreasonable delay any errors which may be discovered.''  The facts in that case were very similar to those in the case at bar, and are stated in the opinion substantially as follows: ''The trustees of an estate had a deposit account with a bank, and checks drawn thereon were signed by a rubber stamp imprinting the name of the estate, authenticated by the actual signature of either trustee.  The trustees had a clerk, who was their agent in dealing with the bank.  He made deposits, filled out the body of the checks, and obtained from the bank the pass-book and vouchers and accompanying check list whenever the account was balanced.  During a period of about a year he forged a number of checks aggregating a large sum, and employed in his forgeries the rubber stamp, with the simulated signature of one of the trustees in authentication thereof.  Whenever the account was balanced the clerk withdrew from the vouchers and destroyed the checks forged by him and also the check list, and after as long a delay as convenient delivered the pass-book and the genuine vouchers to the trustees, who knew that the pass-book was balanced frequently and returned with the paid checks as vouchers and with a detailed list thereof.  The trustees also had a journal and ledger account, upon the stubs of which were entered the genuine checks presented to and paid by the bank.  The trustee who examined the pass-book and vouchers never asked for the check list, which he knew was returned with the vouchers and which would have shown the payment of the forged checks.  He did not examine the balances shown by the pass-book which were struck after the payment of the forged checks, but contented himself with a comparison of the genuine checks with the check-book and with the books of the estate, which comparison disclosed no sign of the forgeries.  The bank also paid interest on the account, and an examination of the pass-book would have shown that the amount of interest credited thereon was much

less than that on the books of the estate and less than would have appeared except for the payment of the forged checks." On this state of facts in that case the court of appeals of New York held that the depositors, by their own negligence in failing properly to examine their pass-book and vouchers, contributed to the payment of the forged checks, and hence that the plaintiff could not recover from the bank the amounts so paid. That case settled the question in New York, overruling the earlier case of *Weisser* v. *Dennison,* 10 N. Y. 68, [61 Am. Dec. 731], relied on by appellant. It seemed necessary to so settle the question, as the authorities were in some confusion in that state upon this subject previous to the adjudication of *Morgan* v. *United States Mortgage & Trust Co., supra.*

In Pennsylvania the leading case of *Myers* v. *Southwestern Nat. Bank,* 193 Pa. St. 1, [74 Am. St. Rep. 672, 44 Atl. 280], held in conformity to the views of the United States supreme court and of the court of appeals of the state of New York in the case above cited and other cases, upholding the same doctrine, and stated that if the plaintiff's duty to the bank had been performed at the proper time, the fact would have appeared that the bank had charged the plaintiff on his bankbook with the payment of two items for which no vouchers appeared among the checks handed to him by the clerk, and that no objection having been made at the time of the presentation of the statements by the bank, the latter had the right to assume that everything was correct, including the two checks purporting to have been forged, and that the silence of the plaintiff was tantamount to a declaration to that effect, and that in afterward honoring checks signed by the same person the bank had a right to consider the fact that these signatures had been at least tacitly recognized by the plaintiff as genuine. Further, the court in that case said: "In view of the uncontradicted evidence as to the foregoing facts, it cannot be doubted that as between the bank and the plaintiff the latter alone should be held responsible for the consequences resulting from the failure to examine the checks in question and approve or reject them within a reasonable time. In contemplation of law the delivery of the checks to plaintiff's clerk was a delivery by the bank to the plaintiff himself, as the basis on which its credits were claimed. The bank was, therefore, entitled to have them examined, and, if

rejected, returned within a reasonable time. That was not done, and because of plaintiff's failure to perform his duty in that regard he should not be permitted to recover. Any other rule would be inconsistent not only with general and long-established custom, but also with well-settled principles of law on the subject.''

Without quoting further it may be said that the great weight of authority in the United States supports the conclusions arrived at in the cases above cited. It is true that those cases were based upon bank-books written up, but there is no distinction in principle between the old-fashioned bank-book and the modern statements furnished by a bank to its depositors from time to time upon the balancing of their accounts and the return of the canceled checks to them. Improved methods of bookkeeping in banks do not render inapplicable the rule of law here invoked and applied. To lay down any other rule than that hereinabove stated would be to add an unjust burden to the duties of paying officers of banks. The greatly increased volume of business consequent upon the development of modern commerce, and the almost universal use of checks in settlement of every conceivable obligation, make the post of paying teller of a bank—compelled as he is to know the signature of every depositor of a bank—an exceedingly difficult one. If depositors may regularly at frequent intervals receive their vouchers and be notified, as was the appellant here, of reduced balances of their accounts in banks consequent upon the unfaithfulness of trusted employees during a period of nearly a year, and by neglecting to exercise reasonable supervision over their own business fail to discover fraud which has been perpetrated upon them and the bank, and may thus leave the bank in ignorance of the frauds thus committed, and charge the bank with the losses thus occasioned, then banks and their paying tellers face hard conditions indeed. We do not feel justified in establishing any such rule in this state.

In the case at bar there is an additional reason for the application of this principle arising from the fact that the statements and returned checks were accompanied by the following written request on the part of the bank: ''Please examine the inclosed account and return this at your earliest convenience signed by the principal, as this bank will not consider itself responsible for errors or discrepancies which

are not advised within fifteen days after delivery of the statement.'' The repeated failures of the appellant to heed this request speaks with much force in favor of the application of the principles above stated.

The claim that the plaintiff never received these statements is hardly worthy of notice, as its officers visited its branch house in San Francisco from time to time, as we have seen, and its manager, Mr. Ardery, was in charge of the branch house constantly during the time when these forgeries were being perpetrated. Their possession of and control over these statements and returned checks follow from their control of their branch establishment.

The final contention of counsel for the appellant is that the trial judge should, even in his view of the law, have given judgment for $140 in addition to the $40 in favor of the appellant to cover three checks in that amount forged by Weeks and paid by the bank in September, 1912, they being the first forgeries, and having been paid by the bank in September, 1912, and included in the bank's statement of October 1st following.

One of the defenses set up by the respondent was that provision of the statute of limitations embodied in subdivision 3 of section 340 of the Code of Civil Procedure, in which it is provided that an action against a bank by a depositor for the payment of a forged check must be brought within one year. This section was added to the statute by amendment in the year 1905. The three checks making up the $140 for which appellant claims an additional judgment should have been given him were paid more than one year before the beginning of this action, the action having been commenced on the 18th of May, 1914. They were also included in the statement rendered by the bank to the plaintiff more than one year before the beginning of the action. It is contended by the plaintiff that its cause of action against the bank upon these three checks did not ripen until discovery by it of the forgeries of Weeks, the argument being based, of course, upon the proposition that an action counting upon fraud does not ripen until the discovery of the fraud.

There are three answers to this contention which seem to us conclusive. The first is that the action of plaintiff was not based upon the fraud, but rather upon the contractual relations of the parties. It is impossible to read into the

plaintiff's complaint anything else than a simple action upon the contract between them. The forgeries of Weeks are not therein mentioned. The second answer to plaintiff's contention is this: The bank committed no fraud against the plaintiff. It concealed nothing from the plaintiff. The section of the code providing that the time for beginning an action upon fraud is postponed until the discovery thereof does not apply between parties to this action, because the bank was not in any sense a party to the fraud. The third answer to this contention is found in the case of *Masonic Benefit Assn.* v. *First State Bank,* 99 Miss. 610, [55 South. 408], in which the supreme court of the state of Mississippi, passing upon the question of the applicability of a statute providing that where the cause of action has been fraudulently concealed by the person against whom it lies the time for its commencement does not begin to run until the discovery of the cause of action, in a case where a depositor was suing a bank for cashing a check upon an unauthorized indorsement, said: "There was no fraud perpetrated or concealed on the part of the appellee. It paid the check in good faith, believing the indorsement genuine. Neither the appellant or the appellee was at fault in failing to discover the forged indorsement after the payment of the check. Appellee's failure to discover the forgery at the time it was presented, resulting in its payment, made it liable to the party defrauded to the amount of the check; but after that the duty rested equally on the appellant and appellee to discover the forgery, and appellant's opportunities for making the discovery were as good as appellee's, because appellant had in its possession the canceled check with the forged indorsement, which had been rendered to it as voucher. The running of the statute was, therefore, not delayed to the time of the discovery by appellant of the forged indorsement."

We therefore hold that the action on these checks aggregating $140 was barred at the time the complaint herein was filed. For the foregoing reasons the judgment is affirmed.

Kerrigan, J., and Zook, J., *pro tem.,* concurred.