Joseph Kaszab, Appellee, v. Greenebaum Sons Bank & Trust Company, Appellant.

Gen. No. 33,071.

Opinion filed February 27, 1929. Rehearing denied March 19, 1929.

WILSON, MCILVAINE, HALE & TEMPLETON, for appellant; J. F. DAMMANN, JR., of counsel.

NELSON, WILSON & MCFALL, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

Joseph Kaszab, plaintiff, was a depositor in the bank of Greenebaum Sons Bank & Trust Company, a corporation, defendant. February 11, 1927, he brought this action against the defendant to recover in assumpsit on account of 468 checks, amounting to approximately $26,700, signed and issued by him during a period of approximately 19 months, which were paid in due course by the bank and charged to his account. Plaintiff's claim is that these checks were paid out on forged indorsements of the payees named therein. It is admitted that Kaszab's signature is genuine, but it is contended that his signatures to the checks bearing the forged indorsements were obtained by fraud perpetrated on him every week and extending over the 19 months' period of time, by a man by the name of Tomasek, an employee of the plaintiff. The defendant filed its plea of the general issue and, at the same time, filed some eight different affidavits of merits sworn to, and, among others, an affidavit to the effect: first, that the plaintiff was negligent in his method of business in allowing the checks in question to be issued; second, that the defendant returned statements semimonthly, showing the deposits made by the plaintiff, the money paid out of the plaintiff's deposit account and charged to the plaintiff, among which were the 468 checks in question, and that these returned bimonthly statements amounted to an account stated; third, that the checks in question were returned bimonthly to the plaintiff, and that plaintiff was negligent in not discovering the forged indorsements earlier.

All of the matters set up as a defense in the affidavit of merits filed by the defendant, including those specifically set forth hereinabove, were stricken out upon motion of the defendant, except one which denied that the indorsements were by persons other than as named in said checks as payees.

The defendant repeatedly offered to introduce evidence for the purpose of showing that the plaintiff was negligent in failing to examine his statements in permitting the forgeries to continue for such a long period of time without discovering that fact; that the plaintiff by his negligent and careless manner of bookkeeping and a failure to maintain a proper inspection of his records was the direct cause of the loss, and other questions bearing upon the negligence of the plaintiff in permitting the loss to occur. In a discussion arising between court and counsel for the defendant, brought about by an offer of counsel to introduce testimony bearing on the question of negligence, the court said: ''But the evidence, the great import of which was negligence on the part of the plaintiff in not finding out that he was being defrauded, I have tried consistently to keep out upon the theory of the plaintiff that that is no defense.'' At the conclusion of the evidence, the court directed the jury to bring in a verdict in favor of the plaintiff for the amount of the judgment which appears to have been approximately the total amount of the checks bearing the forged indorsements.

It appears from the testimony that the plaintiff was engaged in business in the City of Chicago and employed between 70 and 100 workmen. He had in his employ a bookkeeper by the name of Gertz, who made up the payroll checks from time cards. These time cards were kept by Tomasek, who, apparently, had sole charge of them. They showed the number of hours' work done by each workingman and the amount each was to receive. After these checks were prepared, they were signed by the plaintiff and the time cards were returned to Tomasek. After they were signed they were put through a stamping machine which registered the amount in dollars and cents on the check corresponding to the pen and ink figures made by Gertz. After the checks were made out they would be entered upon a check register and after they were re-

turned by the bank they were compared with the bank's statement.

It appears that at first only one or two of the checks bearing the alleged forged signatures of the payees named therein were issued weekly, but the number increased as time went on. The first of these checks appears to have been issued some time in March, 1925, and the last check appears to have been issued some time in October, 1926. These checks appear to have been kept by the plaintiff in a drawer in his desk until they were distributed. All of the checks appear to have been cashed at but two banks, namely, the Kaspar-American State Bank and the Metropolitan State Bank, and all were paid by the defendant on clearing house indorsements. None of these checks was presented directly to the defendant by the payees named therein.

Such evidence as there is in the record would seem to indicate that the employees were hired by the plaintiff and a number of them appear to have been known to him personally.

Each month the defendant bank returned all canceled checks, including the ones in question upon which it had made payment, together with a monthly statement, upon which appeared the following:

"Please examine this statement upon receipt and report any differences at once. It is understood that the depositor must notify this Bank of any errors, discrepancies, irregularities, etc., covering the transaction of any month, before the 15th day of the following month, otherwise no claim against this Bank can be made therefor."

It is insisted on behalf of the plaintiff that a depositor's check, directing to whom it is payable, is the instruction for the bank to follow and that, in the event it does not, it is strictly held accountable to the de-

positor. It is also urged by the plaintiff that the affidavit filed in support of the plea did not set up sufficient facts and, therefore, the court properly struck these affidavits from the record.

We are of the opinion that the affidavit was sufficient. Moreover, the attitude of the trial court throughout, upon the insistence of counsel for the plaintiff, was that negligence was not admissible for the purpose of relieving the defendant of liability. Such being the state of the record, it is apparent that the inclusion of additional facts in the affidavit of defense would have been unavailing. Counsel on both sides have gone to great length in citing authorities in relation to the law governing the relationship between bank and depositor, particularly with reference to the cashing of checks by the bank on forged indorsements. We are of the opinion from an examination of the record that there is evidence upon which the question of negligence should have been submitted to the jury. The fact that the bank furnished monthly statements to the plaintiff; that the employee Tomasek was able to continue the forging of indorsements for a period of 19 months; that the checks were signed by the plaintiff with the name of the payee thereon, during that period of time, is evidence sufficient to take the case to the jury. Any check-up of overhead expense would have shown the unusual cost. Moreover, defendant was precluded from presenting this issue to the jury and, as a result, may have been unable to present other facts bearing on the question of the plaintiff's exercise of due care. A review of the authorities cited by plaintiff discloses that many of the cases cited are of and concerning isolated transactions and, in some cases, involving a relationship other than that of bank and depositor. The rule is too well settled in this State, and we believe generally, to require the citation of numerous authorities.

The Supreme Court of this State in the case of *Bart-lett v. First Nat. Bank of Chicago,* 247 Ill. 490, in its opinion says:

"When one of two innocent parties must suffer loss by reason of the wrongful acts of a third party, the rule is almost universal that the party who has made it possible, by reason of his negligence, for the third party to commit the wrong must stand the loss. · In this case, if the appellants had notified the banks who were handling said drafts that R. L. Walsh was forging the names of the farmer payees in order to get the money on the said drafts from the banks, the loss which was sustained by the passing of said drafts would never have occurred. This they did not do, but remained quiet so long as they thought they were getting the benefit of the money that was paid on said drafts, and only complained when they learned that their agent, Walsh, was taking advantage of the position in which they had placed him by his appointment as their agent, with authority to draw drafts, by 'drawing drafts to farmers who had not delivered grain, and endorsing the names of such farmer payees upon the drafts and drawing the money from the banks thereon and appropriating the same to his own use. We think it clear if the appellants enjoyed the benefits which accrued to them from the business done by Walsh so long as it was done honestly, that when Walsh became dishonest and appropriated the money which he drew by reason of forged endorsements they should suffer the loss which followed his rascality, and not be permitted to unload such loss upon the banks that innocently handled said drafts."

This court in its opinion in the case of *Osborn v. Corn Exchange Nat. Bank of Chicago,* 218 Ill. App. 28, in its opinion says:

"The question for our solution is: Will the law saddle the loss in this case upon defendant, who was guile-

less of negligence in the challenged transactions, or compel the plaintiffs, whose negligent conduct gave their bookkeeper, DeLisle, unrestrained opportunity to commit the forgeries complained of? It cannot be gainsaid that defendant furnished plaintiffs every opportunity during all the time covered by the forgeries to discover and arrest them, by rendering to plaintiffs monthly statements of the condition of their bank account, returning each time all vouchers, including the checks which bore the forged indorsement.

"We are of the opinion that the negligence of the plaintiffs attributable to their conduct as above recited is an effectual barrier to recovery in this action. *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41; *Morgan v. U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *Leather Manufacturers' Nat. Bank v. Morgan*, 117 U. S. 96; *California Vegetable Union v. Crocker Nat. Bank*, 37 Cal. App. 743, 174 Pac. 920.

"It clearly appears from the proofs that had either of the plaintiffs given any attention whatever to the returned checks or to the state of their balances with the defendant bank, they would have known that DeLisle was forging the name of the Federal Union Insurance Company to checks, cashing them and converting the money thus received to his own use. Nor can it be denied that defendant in rendering monthly statements with vouchers, checks, etc., to plaintiffs, showing the state of their accounts and all the transactions of the preceding month, acted according to the usual custom of bankers in Chicago."

The United States Supreme Court in the case of *Empire Trust Co. v. Cahan*, 274 U. S. 473 (47 Sup. Ct. 661), in its opinion, says:

"The form in which the withdrawals took place does not appear. They might have been, like the deposits, in checks to the son's own order. All that is known is that the respondent did not get the benefit of them.

But we do not place our decision upon that narrow ground. For in addition to what we have said, the transactions went on for over two years and the petitioner fairly might expect the respondent to find it out in a month or two if anything was wrong. Careful people generally look over their bank accounts rather frequently.''

Banks deal with a great number of depositors and, while they owe an obligation to their customers, nevertheless, in view of the great number of transactions carried on in the course of a banking day, it becomes incumbent upon the depositor to assist by exercising some sort of supervision over his own individual account. It is not fair to the bank for such a depositor to ignore his own responsibility and rely solely upon the diligence of the institution with which he is doing business. This would appear to be particularly true where the depositor is in a better position to discover the fraud practiced upon him through the agency of an employee closely associated with and under his direct supervision and control.

For the reasons stated in this opinion the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HOLDOM, P. J., and RYNER, J., concur.