[Civ. No. 6593. First Appellate District, Division Two.—March 18, 1929.]

LUELLA MATTESON, Appellant, v. BANK OF ITALY (a Corporation), Respondent.

Fred A. Watkins and James A. Ballentine for Appellant.

Louis Ferrari and J. J. Posner for Respondent.

NORTON, J., *pro tem.*—In this case plaintiff, a married woman, took certain stock of the Security Fire Insurance Company of Davenport, Iowa, her separate property, to defendant bank and handed it to a clerk at the bank to have it sent to Davenport to collect the money for the

purchase price of the stock. She indorsed the stock and signed a sight draft which was presented to her by the clerk, and instructed · the clerk to deposit the money for her in the bank when it was received. Her husband was in the bank at the time talking with its manager, but was not near enough to participate in or hear the conversation with the clerk.

Plaintiff and her husband had a joint account in the savings department of the bank, which is the only account either of them had with the bank prior to the receipt of this money, but apparently the purchase price of the stock was not deposited in this account nor to the credit of the wife, but was by the bank paid to her husband or deposited to his account, from which he withdrew it to make other investments.

The bank did not notify plaintiff of the receipt of the money for the stock nor that it had been paid to her husband, but her husband advised her shortly after its receipt by the bank that it had been so received, and about three months after its receipt by the bank told her that he had taken the money and used it to make other investments.

Plaintiff made no complaint to the bank nor inquired of it regarding this money for approximately three years after she knew that her husband had received it, though on several occasions during this time she drove to the bank with her husband and remained outside in an automobile while he went into the bank to transact business.

In March, 1926, relations between plaintiff and her husband not being very cordial, and plaintiff having found a bank-book of their joint account among his possessions, she went over to the bank to see whether there was anything in this account. She did not go for the purpose of inquiring concerning the purchase price of her stock and testified that it was only by chance that this subject was mentioned on that visit and came to be discussed for the first time between her and the bank. A short time later, in that month, her husband left her, and still later in the year 1926, this action was commenced to recover from the bank the money collected by it in January, 1923, and paid to her husband.

This cause was tried before a jury and at the conclusion of plaintiff's case a motion for judgment of nonsuit was

granted by the trial court, from which judgment plaintiff prosecutes this appeal.

The motion for nonsuit was based on two grounds:

1. That the plaintiff's testimony was too vague and insufficient to prove the allegations of the complaint.

2. That the transaction as testified to was barred by the statute of limitations.

In the argument on the motion defendant's counsel presented and extensively argued other grounds not included in the original motion, including the ground of plaintiff's laches and acquiescence in the payment by the bank to her husband.

■ Appellant makes the point that no ground not stated in the motion should have been considered by the court, but we believe this objection to be untenable. The remaining grounds for nonsuit urged by respondent were fully argued by counsel for both parties, were manifestly understood both by them and the trial judge to be before the court, and as plaintiff did not then object to their consideration by the trial judge, she cannot now be heard to so object for the first time. (*Leballister* v. *Morris,* 59 Cal. App. 699 [211 Pac. 851].)

■ Plaintiff testified that she objected to her husband taking her money and voiced these objections to him without receiving any satisfactory explanation from him; that she had arguments with him about putting the money back in the bank and that during the last few months they lived together their relations were not harmonious by reason of his not putting it back.

Thus, she had the matter of the bank's error in mind from March, 1923, to March, 1926, but, although she had ample opportunity to do so, she made no mention of it to the bank. It follows, therefore, that, unless she planned to await the result of her husband's investments, enjoying the fruits if successful and recouping from the bank if unfortunate, she must have formed the purpose of acquiescing in the erroneous payment made to her husband and have persisted in this purpose up to the time in March, 1926, when, as she testified, the matter was by chance discussed by herself and an official of the bank.

No adjudicated case presenting identical facts has been brought to our attention, but it seems clear that there is a

legal as well as a moral duty imposed on one who discovers another acting in error, to exercise reasonable diligence in giving notice of the error if he intends to hold the erring party responsible for it.

Acquiescence in error takes away the right of objecting to it. (Sec. 3516, Civ.· Code.)

He who takes the benefit should bear the burden. (Sec. 3521, Civ. Code.)

In *Dana* v. *National Bank of the Republic*, 132 Mass. 156, the court said that the plaintiffs, who were the depositors, whose clerk had altered a check after it had been signed, owed to the bank "the duty of exercising due diligence to give it information that the payment was unauthorized. They cannot now require the defendant to correct the mistake to its injury, from which it might have protected itself but for the negligence of plaintiffs."

█ It is well established that a depositor, whose pass-book is written up and returned to it by a bank, is bound to report to the bank without unreasonable delay any errors which may have been discovered. (*California V. Union* v. *Crocker Nat. Bank*, 37 Cal. App. 743 [174 Pac. 920]; *Otis Elevator Co.* v. *First Nat. Bank*, 163 Cal. 31 [41 L. R. A. (N. S.) 529, 124 Pac. 704]; *Janin* v. *London & S. F. Bank*, 92 Cal. 14 [27 Pac. 1100]; *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96 [29 L. Ed. 811, 6 Sup. Ct. Rep. 657].)

It is true that these cases proceed to some extent on the theory that a balanced pass-book returned to the depositor is akin to a stated account which the usages of business require to be examined and objected to if erroneous, but the fundamental principle supporting them is the rule that the depositor who negligently or intentionally to the injury of the bank for an unreasonable period leaves it in ignorance of its error or of a fraud committed upon it, cannot charge the bank with the loss thus sustained.

█ On the other hand, one who conceives and persists for an unreasonable length of time in the intention not to enforce responsibility for an error should not be permitted to change his intention to the injury of the erring party. "One must not change his purpose to the injury of another." (Sec. 3512, Civ. Code.)

In this case, the bank is not charged with fraud nor with intentional conversion of the money of plaintiff. It erroneously paid the money to her husband, and plaintiff knowingly permitted it to rest for three years in the belief that the payment was properly made or was not objected to by her, during which time it, therefore, made no effort to recover the money from him and at the expiration of which time, if any penal offense had been committed by him, the statute of limitations apparently barred his prosecution.

The first intimation received by the bank of any objection on the part of plaintiff was but a few days before her husband left her and went to Los Angeles. It cannot be doubted that the right to recover this money from the husband during the three years when he was readily available, was doing business with the bank, and had recently received the money, was a valuable right to the bank of which it had in practical effect been deprived by plaintiff's failure to notify it of her objection within a reasonable time after her discovery of the erroneous payment.

"Still further, if the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was thereby prevented from taking steps by the arrest of the criminal, or by an attachment of his property, or other form of proceeding to compel restitution." (*Leather Manufacturers' Bank* v. *Morgan, supra.*)

The question whether injury resulted from the negligence or laches of plaintiff is one for determination upon the facts of each particular case and has generally, but not always, been submitted to the jury. In some cases, of which *Janin* v. *London & S. F. Bank, supra*, is an example, the facts were such that the court held as a matter of law that injury could not have resulted and that this question was properly not presented to the jury. In sustaining the action of the trial judge in the last-mentioned case, the court said: "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to justify such an

inference, the court may properly refuse to submit the question to the jury.''

In the present case, the injury to the bank occasioned by plaintiff's delay is so obvious that we believe no other inference could have been drawn, and that the jury would not have been warranted in finding that the defendant was not prejudiced by the conduct of plaintiff.

Her lack of reasonable diligence in notifying the bank of its error and prosecuting her claim is such that the most favorable inference which can be drawn is that she acquiesced in the payment to her husband, and it is our opinion that she should not now be permitted to withdraw this acquiescence.

If it appears, however, as it does in the instant case, that a party has been deprived of an advantage he might have had if the claim had been seasonably insisted on, or if such party be subjected to any hardships that might have been avoided by reasonably prompt proceedings by the claimant, a court of equity will not interfere to give relief, but will remain passive. (10 R. C. L. 400.)

Defendant did not specifically plead in its answer either estoppel, laches or acquiescence, but, if it be conceded that it were ordinarily necessary to so plead, plaintiff was the sole witness in this action and the action was tried, argued, and submitted without objection by plaintiff, on the theory that the defense of plaintiff's laches was available to defendant and it is the opinion of the court that the motion for nonsuit was properly granted.

The judgment is affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 16, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1929.