[Civ. No. 6472. First Appellate District, Division One.—December 7, 1928.]

LOIS A. ATWELL, Respondent, v. MERCANTILE TRUST COMPANY OF CALIFORNIA, Appellant.

Keyes & Erskine, Hartley F. Peart and Charles V. Barfield for Appellant.

Thornton Wilson for Respondent.

SPENCE, J., *pro tem.*—The plaintiff and respondent, a depositor in the defendant and appellant bank, brought this

action by filing a "Complaint for Deposits." Respondent alleged a balance due and unpaid of $1,050, which appellant refused to pay upon demand.

Appellant denied that any balance was due or unpaid, and alleged the disbursement of the entire deposits upon order of the respondent. Appellant further alleged that the action was barred by subdivision 3 of section 340 of the Code of Civil Procedure and that respondent was barred by laches.

Upon the trial no question was raised by respondent concerning the payments made from her account except as to two checks totaling $1,050. These checks were both made payable to the Oakland Hospital Corporation, the first, in the sum of $500 being dated February 17, 1925, and the second, in the sum of $550, being dated February 18, 1925. Both of these checks were issued by respondent, and were thereafter paid by appellant bank upon forged indorsements. This action was commenced on August 13, 1926. The only defenses urged by appellant upon the trial were the defenses of the statute ·of limitations and laches. The trial court found against appellant on both defenses, and judgment was entered in favor of respondent for the sum of $1,050 and interest. Appellant appeals from this judgment and raises the same questions upon this appeal.

■ Ordinarily there is no limitation upon the time within which a depositor may bring an action to recover money deposited with a bank. (Sec. 348, Code Civ. Proc.) The legislature, however, by amending subdivision 3 of section 340 of the Code of Civil Procedure, placed a limitation of one year upon actions by "a depositor against a bank for the payment of a forged or raised check." This latter section covers a special class of cases and is an exception to the general rule. ■ If, then, the gravamen of an action is the payment of a "forged or raised" check within the meaning of the latter section, such section and the limitation therein prescribed would apply despite the fact that a plaintiff draws the complaint in the form of a "complaint for deposits." (*Union Tool Co.* v. *Farmers etc. Nat. Bank,* 192 Cal. 40 [28 A. L. R. 1417, 218 Pac. 424].) ■ The controlling question to be decided on the issue of the statute of limitations is whether the payment of a check upon a "forged indorsement" constitutes payment of a "forged

check'' within the meaning of subdivision 3, section 340 of the Code of Civil Procedure.

This question has been passed upon in other jurisdictions under statutes using the words ''forged or raised check.'' Section 326 of the Negotiable Instruments Law of New York provided: ''No bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment such depositor shall notify the bank that the check so paid was forged or raised.'' This section has been held to have no application to checks bearing forged indorsements (*Kleinman* v. *Chase Nat. Bank,* 124 Misc. Rep. 173 [207 N. Y. Supp. 191]). The court there said, on page 193: ''The commonly accepted meaning of the words, 'a forged check,' in the commercial world is a check upon which the maker's name is forged. It is manifest by a consideration of the reason for the enactment of section 326 of the Negotiable Instrument Law, as well as the commonly accepted meaning of the words 'forged check,' that the legislature intended to limit the requirement to give notice to cases where payment is made on a check upon which the maker's signature is forged, and did not intend to extend the statute to include forged endorsements.''

In Iowa a similar section (sec. 9266, Code of 1924) provided that ''No bank shall be liable to a depositor for the payment by it of a forged or raised check unless, within six months after the return to the depositor of the voucher of such payment, such depositor shall notify the bank that the check so paid is forged or raised.'' This section was likewise held inapplicable to forged indorsements (*McCornack* v. *Central State Bank,* 203 Iowa, 803 [52 A. L. R. 1297, 211 N. W. 542]).

Counsel for appellant argues that the foregoing cases interpret sections dealing with rules of substantive law and not statutes limiting the time for the commencement of actions. This may be conceded. The New York and Iowa statutes affect the right rather than the remedy. However, no good reason appears for giving the phrase ''forged or raised check'' a broader interpretation when found in a statute of limitations than the interpretation to be given to that phrase when embodied in a rule of substantive law.

The execution of a check and the execution of an indorsement are distinct. The first is the act of the maker and the second is the act of the payee. A check is complete as a check without an indorsement. A check is defined as a "bill of exchange . . . payable on demand." (Sec. 3265 [a], Civ. Code.) An indorsement "must be written on the instrument itself or upon a paper attached thereto" (sec. 3112, Civ. Code). The history of the development of the law relating to the duties and obligations between banks and depositors briefly referred to in the above decisions leads to the conclusion that the words "forged or raised" check, as used in these statutes and in our own statute, do not refer to a "forged endorsement." In earlier years great uncertainty existed as to whether any duty or obligation whatever fell upon the depositor to examine his vouchers and notify the bank that a check had been forged or raised. As the depositor could easily detect or discover that his signature had been forged or that the check had been raised, the reasonableness of a rule imposing some such duty became apparent. A flexible rule was adopted in most jurisdictions requiring a reasonably careful examination by the depositor, and further requiring the depositor to notify the bank within a reasonable time. This rule did not fix a definite time for the termination of liability of the bank nor for the commencement of an action by a depositor upon a forged or raised check. Statutory enactments then appeared to definitely fix such time. Some statutes, such as those in New York and Iowa, dealt with the substantive rights, and terminated the liability unless notice was given to the bank within a specified time. Others, such as the California statute, did not deal with the substantive rights, but merely affected the remedy by limiting the time within which actions might be commenced. Both types of statutory enactments sought to fix a definite time, after which no claim could be asserted, based upon the alleged forging or raising of the check, which it was the duty of the depositor to detect.

▮ That no duty is or was imposed upon the depositor to discover forged indorsements is clear from the reasoning and authorities cited in the foregoing decisions. In the absence of actual knowledge of the fact that an indorsement has been forged, the depositor is entitled to assume that the bank has paid the check only upon a genuine indorsement.

Our own supreme court has said on this subject: "But a depositor is not bound to examine the endorsements on returned checks. He is bound within a reasonable time to ascertain the genuineness of the checks themselves (*Janin* v. *London etc. Bank*, 92 Cal. 14 [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100]), but, as to indorsements the rule and its reason are correctly stated in *Shipman* v. *Bank*, 126 N. Y. 318 [22 Am. St. Rep. 821, 12 L. R. A. 792, 27 N. E. 371].

" 'The defendant's contract was to pay the checks only upon a genuine endorsement. The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must at its own peril determine that question. It has the opportunity by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the endorsement is genuine or not. When it returns the check to the depositor as evidence of a payment made by his direction the latter has the right to assume that the bank has ascertained the fact to be that the endorsement is genuine' (citing cases)." (*Los Angeles Inv. Co.* v. *Home Sav. Bank of Los Angeles*, 180 Cal. 601, 611 [5 A. L. R. 1193, 182 Pac. 293, 297].)

In interpreting the Iowa statute above set forth the court said: "Prior to the enactment of the statue we had held in *German Sav. Bank* v. *Bank*, 101 Iowa, 530 [63 Am. St. Rep. 399, 70 N. W. 769], that a depositor was under no duty to the bank as to the genuineness of an indorsement. We said: 'The check was returned with an apparent genuine endorsement of Quinlan. The fact that intervenor had paid the money thereon, and presumably had satisfied itself that the endorsement of Quinlan was genuine, as it was in duty bound to do, was a further reason why plaintiff should not, in the absence of knowledge to the contrary, have concerned itself as to the genuineness of the endorsement of Quinlan's name thereon. Furthermore, the plaintiff owed no duty to the defendant or to the intervenor as to the genuineness of the endorsement of Quinlan' (citing cases). The statute does not, we think, change this rule in respect to the genuineness of the signature of endorsers." (*McCormack* v. *Central State Bank*, 203 Iowa, 833, 846 [52 A. L. R. 1297, 211 N. W. 542, 548].)

With reference to the New York statute quoted above the court said: "If the legislature intended to modify this common-law maxim to the extent of imposing upon the depositor the onerous and unreasonable duty to detect within a year forged endorsements it would have stated it explicitly. Such intended modification cannot be found in the express words of the statute, nor can it be fairly implied from the text. (*North British & Mercantile Ins. Co.* v. *Merchants' Nat. Bank,* 161 App. Div. 341 [146 N. Y. Supp. 720].) We are thus in accord with the view of the court below that section 326 had no application to payments made by a bank upon a forged endorsement, and the judgment against the defendant Chase National Bank is affirmed." (*Kleinman* v. *Chase Nat. Bank,* 124 Misc. Rep. 173, 175 [207 N. Y. Supp. 191, 194].)

The enactment of the amendment of subdivision 3 of section 340 of the Code of Civil Procedure did not purport to change the substantive law relating to the duties and obligations of banks and depositors. It merely fixed a definite time within which the depositor could bring an action in those cases where the substantive law already imposed upon him the duty to discover that the check was forged or raised. If it be deemed appropriate to impose new duties upon the depositor with respect to detecting forged indorsements, or to extend the limitation of subdivision 3 of section 340 to include actions for payment by banks upon forged indorsements, that is a matter of legislative concern.

Counsel for appellant urges that the unauthorized indorsement and cashing of the checks in this case constituted forgery under the provisions of sections 470 and 476 of the Penal Code. That the indorsements were forged is conceded by respondent, and the trial court made findings to that effect. The question, however, is not whether forgery was committed in the indorsing and cashing of the check, but rather whether this is a case of a "forged or raised" check within the meaning of subdivision 3 of section 340 of the Code of Civil Procedure.

Counsel further urges that the case of *Union Tool Co.* v. *Farmers etc. Nat. Bank,* 192 Cal. 40 [28 A. L. R. 1417, 218 Pac. 424], conclusively determines the question here involved. That case is clearly distinguishable. There was an alteration of the payee's name on the face of the checks as well as

forged indorsements. The alteration of the payee's name on the face of the checks constituted forgery under section 470 of the Penal Code, and that case, therefore, involved *forged checks* as well as *forged indorsements*. The duty was upon the depositor to discover such alterations on the face of the checks. Any reference in the decision to the forged indorsements was incidental and not necessary to the decision. That case was considered and the distinction clearly brought out in the case of *McCornack* v. *Central State Bank, supra,* where the court said on page 846: "The endorsement is no part of the check as made by the drawer, although it is, of course, contemplated that the payee must endorse it. But, since the maker is not required to know the signature of the payee, and has a right to issue the check payable to the order of one unknown to him, relying on the bank to pay only in accordance with his direction, a forged endorsement does not make the check a 'forged check' within the meaning of the statute. In *Union Tool Co.* v. *Farmers etc. Bank, supra,* cited by appellant, there was, in addition to a forged endorsement, an alteration on the face of the check. We are of opinion the action is not barred by the statute in question."

█ In addition to the defense of the statute of limitations, it is further urged that respondent's claim is barred by laches. Appellant alleged in its answer "that plaintiff unduly delayed presenting and prosecuting the claim asserted herein, and by reason of such laches is barred from recovery in this action."

Respondent issued the two checks in February, 1925. They were intended to apply as payment for stock in the Oakland Hospital Corporation. It appeared from respondent's testimony that she decided to purchase the stock more as a matter of community service than as an investment. Her vouchers, including these checks, were returned in March, 1925. She did not receive any stock certificate and gave no attention to the matter until about the time of the stockholders' meeting in the latter part of January, 1926. She was then advised that she was not a stockholder, and that the corporation had no record of any purchase of stock by her. The checks had been cashed by a man named Wise, being indorsed "Oakland Hospital Corporation, J. M.

Wise.'' Wise had no authority to cash the checks, and had forged the indorsements and apparently kept the proceeds. The card of authorized signatures filed at the bank by the corporation did not show the signature or name of Wise. Respondent notified the bank of the unauthorized indorsements in the latter part of January or first part of February, 1926. The checks had originally been cashed by the Oakland Bank and forwarded to the appellant bank. In subsequent conversations with an officer of the appellant bank the question of whether respondent should look to the Oakland Bank or appellant bank was discussed. Respondent made formal demand upon appellant by check for $1,050 payable to cash, dated July 28, 1926, which check was not honored but returned with the notation ''Not sufficient funds.'' The complaint was filed August 13, 1926.

In support of appellant's claim of laches the case of *California Vegetable Union* v. *Crocker National Bank*, 37 Cal. App. 743 [174 Pac. 920], is cited. That case did not involve forged indorsements and is not in point. It involved forged checks where the maker's name was forged by an employee upon over one hundred checks at various times covering a period of many months. The defense of laches might well be urged in that case in view of the duty imposed upon the depositor in relation to checks upon which his name is forged. The absolute failure of the depositor in that case to make any examination of its statements and vouchers to detect the forgery of its name was the basis of the decision. In the present case there was no duty upon respondent to detect the forged indorsement, as shown by the authorities cited. Consequently she cannot be charged with laches before she discovered that the indorsements were forged in the latter part of January, 1926. Upon discovery of the forgery she did notify the bank without delay. Although formal demand and the commencement of the action did not follow for five or six months, we believe under the circumstances that the trial court properly found that respondent had not unduly delayed presenting and prosecuting her claim.

Under the facts as shown by the uncontradicted testimony we are of the opinion that the findings and conclusions of the trial court to the effect that the action was not barred by

the statute of limitations, and that respondent was not guilty of laches, were correct.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 5, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 4, 1929.

All the Justices concurred.