AMERICAN SURETY COMPANY OF NEW YORK, Appellant, *v.* EMPIRE TRUST COMPANY and Others, Respondents, Appellants, Impleaded with WYANDOTTE SAVINGS BANK, Respondent.

Fourth Department, March 12, 1930.

*Stanley & Gidley* [*Ray M. Stanley* and *Arthur E. Otten* of counsel], for the plaintiff.

*Stuart McNamara* [*A. Bruce Hopkins* of counsel], for the defendant Empire Trust Company.

*Cardozo & Nathan* [*Franklin R. Brown* of counsel], for the defendant The American Exchange-Pacific National Bank.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Fritz Fernow* and *William E. Lytle* of counsel], for the defendants Detroit Savings Bank and Wyandotte Savings Bank.

CROSBY, J. The Farmers and Mechanics Savings Bank of the City of Lockport, New York, hereinafter called the Lockport bank, had a depositor named Lukas Szmytki who had two interest accounts each evidenced by a pass book. At the time of the transactions that are the basis for this action the older account had been running for about ten years, the other about two years. In each account the bank carried the name as " Szmytki." In the identification card which the depositor filed with the bank at the time of starting the first account he spelled his name " Szmytki," but in the identification card which he filed with the bank when he opened his second account the depositor spelled his name " Szmydki." In each card he wrote his first name so that it looks like " Lukass " or " Lukasz." Szmytki was a consistent saver, making deposits regularly every month or oftener and never withdrawing a penny in all the years the accounts were running, excepting that when the first account reached a credit balance of something over $6,000, the depositor withdrew enough to reduce that account to exactly $5,000 and started the second account with the exact amount of the withdrawal from the old one. Szmytki made a deposit of $150 on June 1, 1925, and the credit was entered by the bank in the younger of the two pass books.

On June fifth the Lockport bank received a letter from Wyandotte,

Mich., dated June third, signed "Lukas Szmytki" (without any attempt to imitate the "ss" or "sz" effect at the end of the depositor's signature) and worded as follows:

"WYANDOTTE, MICH.
"June 3–25

"FARMERS AND MECHANICS SAVINGS BANK
   "Lockport, N. Y.

 "DEAR SIR.—Please find inclosed pass books #49687 and 38448 with a cheques #38448 closing account and 49687 for thirty five hundred please send me a bank drafts on same to following adres 102 St. John St Wyandotte Mich. with returning my passbook to me, and oblige      Yours Truly

"LUKAS SZMYTKI"

The cashier and a bookkeeper of the Lockport bank compared the signature to the above letter and the signatures upon the two checks inclosed in the letter with Szmytki's signatures on his identification cards, and, without further inquiry, made out two drafts upon the defendant Empire Trust Company, one for $5,360.66, closing the older account, and one for $3,500, which left $290.30 in the younger account. The bank retained the pass book representing the account that was thus closed and inclosed the other pass book, written up to date, with the two New York drafts and mailed them to "Lukas Szmytki, Wyandotte, Mich.," together with a letter as follows:

"June 5, 1925.

"Mr. LUKAS SZMYTKI,
   "Wyandotte, Mich.

 "DEAR SIR.— As requested in your letter of June 3, we enclose herewith the following drafts payable to your order —
  "Draft #658    $5360.66
   "  661     3500.00
 "We also enclose pass book #49687, which is written up to date.

"Yours truly
"C. H. WENDELL,
"Secretary."

 The two checks that were sent to the Lockport bank from Wyandotte, inclosed with the letter asking for the drafts, were both drawn upon printed forms with the words "Farmers & Mechanics Savings Bank, Lockport N. Y." printed thereon. In filling up the blanks in the checks the date on the $3,500 check is "June 3 1922." The date of the larger check is "June 3, 1925" and the figures of the latter check call for $6,360.66 while the words call for $5,360.66. Before issuing the drafts the cashier of the Lockport bank changed the figures to correspond with the words.

 It is conceded that a man named Czuj stole Szmytki's pass books;

took them to Wyandotte, wrote the letter from there, forged the checks and secured the drafts. Czuj indorsed the name of Szmytki upon the two drafts, deposited the amount thereof with defendant Wyandotte Savings Bank in the name of Lukas Szmytki, later drew out the money and absconded. The Wyandotte bank indorsed the drafts and started them through the usual banking channels. The drafts passed, in turn, through the defendant Detroit Savings Bank and defendant The American Exchange-Pacific National Bank before reaching the drawee, the defendant Empire Trust Company. Each bank through which the drafts passed indorsed the same, thereby guaranteeing all former indorsements.

The fraud was not discovered until after the drafts had reached the Lockport bank which issued them. Ultimately the Lockport bank discovered the fraud and restored to Szmytki the money that had been charged against his accounts; the plaintiff reimbursed the Lockport bank pursuant to an insurance policy, and the plaintiff brought the action against defendant Empire Trust Company upon its indorsement. That defendant, on motion, brought in the American Exchange-Pacific National Bank upon its indorsement. The latter defendant brought in defendant Detroit Savings Bank, and the Detroit Savings Bank brought in the Wyandotte Savings Bank. Since each defendant bank has recourse against prior indorsers, and since the Wyandotte bank was the first to indorse after the indorsement of Czuj, this case resolves itself into a question whether the loss shall fall upon the Wyandotte Savings Bank or upon the plaintiff which insured the Lockport bank against losses due to forgery.

The Wyandotte Savings Bank as well as all the other defendants rely upon two defenses. The first is that the defendants did not cash the drafts upon forged indorsements. They claim that the indorsements were not forged by Czuj for the reason that the Lockport bank intended the drafts to be payable to the identical person who ordered them and cashed them, namely, Czuj, even though deceived into believing he was the depositor Szmytki. That argument finds its best support, so far as the authorities in this State are concerned, in *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd., on opinion below, 215 N. Y. 726). Of that case it was later said: " The *Hartford* case, however, is a border line case and should not be extended beyond the facts thereof." (See *United Cigar Stores Co.* v. *Am. Raw Silk Co., Inc.*, 184 App. Div. 217; affd., without opinion, 229 N. Y. 532.) And in *Strang* v. *Westchester County Nat. Bank* (235 N. Y. 68, at p. 72) Judge CARDOZO speaks of the *Hartford* case as " a case which later opinions have said is not to be extended."

Without going at length into the authorities which deal with the subject of the intent of the drawer, as bearing upon the risk assumed by the paying bank, we are disposed to hold as a matter of law, in this case, that the Lockport bank intended its drafts to be paid to its depositor Lukas Szmytki, not to Czuj, and that the Wyandotte bank paid the drafts upon forged indorsements. That is the effect of the holding in *Palm* v. *Watt* and *Mercantile National Bank* v. *Silverman*, hereinafter cited. (See, also, *Gutfreund* v. *East River National Bank*, 251 N. Y. 58.) Upon the undisputed facts in this case, any other holding would do violence to any common sense definition of the word "intent." The word "intent" means purpose, aim or design. And if, in a sense, the Lockport bank intended to deal with Czuj, masquerading as Szmytki, that intent was subsidiary to its real intent not to be a party to a crime but to pay its depositor's money to that depositor.

We think that the rule as to liability of a paying bank is the one laid down in *Shipman* v. *Bank of State of New York* (126 N. Y. 318, at p. 327): "Payments made upon forged indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel or by reason of some negligence chargeable to the depositor." (Citing cases.) And at page 328 we find this language: "The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the endorsement is genuine or not." (See, also, *Weisser* v. *Denison*, 10 N. Y. 68; *Welsh* v. *German American Bank*, 73 id. 424; *Bank of British North America* v. *Merchants' Nat. Bank of N. Y.*, 91 id. 106; *Citizens' National Bank* v. *Importers & Traders' Bank*, 119 id. 195; *Palm* v. *Watt*, 7 Hun, 317; *Mercantile National Bank* v. *Silverman*, 148 App. Div. 1; affd., on opinion below, 210 N. Y. 567; *Gallo* v. *Brooklyn Savings Bank*, 199 id. 222.)

In the second defense made by defendants there is more merit. The substance of that defense is contained in these arguments: The Lockport bank had before it the genuine signatures of Szmytki for use in comparison. Those signatures had the peculiar "ss" or "sz" at the end of the first name, which are entirely lacking in the signatures to the forged checks upon which the drafts were issued. The Lockport bank was paying nearly $9,000 out of an account that had never suffered a withdrawal in ten years, and to some party writing from the State of Michigan and dating his letter within two days of the last deposit. The depositor was a day laborer living and working in Lockport for years, had made

deposits in small amounts every month or oftener for ten years and had never written his own deposit slips in all that time. Furthermore, one of the forged checks was dated three years back. Both checks were signed " Szmytki " although the depositor's last signature filed with the bank was spelled " Szmydki."

Other arguments are made in an effort to show a degree of carelessness on the part of the Lockport bank that should estop it, or its assignees, from insisting upon the strict rule of liability, resting upon paying banks, to pay upon proper indorsements. The Lockport bank not only placed the drafts in Czuj's hands and at his disposal but returned Szmytki's pass book to him and gave him a letter written by its officer, all of which were useful in the hands of Czuj for the carrying out of his fraud.

By these arguments the trial court was persuaded to grant the motion by defendants for a dismissal of the complaint at the conclusion of the evidence. This was error. We are of the opinion that it is for the jury to say whether or not plaintiff's assignor was estopped, by its conduct, under all the facts and circumstances of the case, from holding the paying banks to the usual rule of liability for paying upon an indorsement that was forged. (*Shipman* v. *Bank of State of New York, supra; Gutfreund* v. *East River National Bank*, 251 N. Y. 58; *National Surety Co.* v. *Manhattan Co.*, 252 id. 247.)

For that reason the judgment should be reversed on the law and a new trial ordered, with costs to the appellants to abide the event.

All concur. Present — Sears, P. J., Crouch, Taylor, Edgcomb and Crosby, JJ.

Judgment reversed on the law and facts and a new trial granted, with costs to appellants to abide event. Certain findings of fact disapproved and reversed.