DETROIT PISTON RING CO. v. WAYNE COUNTY & HOME
SAVINGS BANK.

1. BANKS AND BANKING—LIABILITY OF BANK FOR FORGED CHECKS—
STATUTES—LIMITATION OF ACTIONS.
Section 8041, 2 Comp. Laws 1915, providing that no bank shall
be liable to depositor for payment by it of forged or raised
check unless within three months after return of voucher
depositor shall notify bank that check so paid is forged or
raised applies only to facts necessarily within knowledge
of drawer at time of return of check to him, namely, whether
his name has been forged, or check raised, or name of payee
changed, and does not apply to forged indorsement of payee.

2. SAME—FORGED INDORSEMENT NOT FORGED CHECK.
Forged indorsement of payee does not make check a ''forged
check,'' within meaning of 2 Comp. Laws 1915, § 8041.

3. SAME—DUTY OF DEPOSITOR IN REGARD TO FORGED INDORSEMENT.
There is no duty on part of drawer of check to ascertain wheth-
er indorsement of payee's name is genuine, because he may
not be familiar with payee's signature.

4. SAME—STATEMENT AND RETURNED CHECKS—ACCOUNT STATED—
FRAUD—MISTAKE.
Failure of depositor to notify bank within ten days of receipt
of statement each month accompanying canceled checks that
payee's indorsement was forged did not discharge bank
from liability therefor, but at most said statement, which
was receipted for by depositor, made an account stated,
which may always be opened upon proof of fraud or mistake.

5. SAME—DEPOSITOR NOT BOUND BY ACCOUNT STATED—MISTAKE—
NOTICE—FORGED INDORSEMENTS.
Depositor signing receipt for statement accompanying canceled
checks each month is not bound by the account stated, where
it was acting under mistake of fact and had no knowledge that
payee's indorsement on some checks had been forged.

6. PRINCIPAL AND AGENT—IMPUTED KNOWLEDGE OF FRAUD.
Agent's knowledge of fraud may not be imputed to principal,
where agent's knowledge was acquired while acting in opposi-
tion to principal's interest.

Duty of a depositor in a bank to make examination of pass book
or canceled checks, see annotation in 15 A. L. R. 159; 28 A. L. R.
1435; 67 A. L. R. 1121.

7. BANKS AND BANKING—DEBTOR AND CREDITOR.

  Relation between banker and depositor is that of debtor and creditor.

8. SAME—DEFAULT—DEMAND.

  While, as rule, there is no default on part of bank until depositor has made demand, denial of liability by bank for money paid out on checks on which payee's indorsements were forged makes demand unnecessary prior to commencement of action.

9. SAME—ACCOUNT STATED—DEMAND FOR MONEY PAID ON FORGED INDORSEMENTS.

  Where statements are made each month to depositor by bank for purpose of showing that it will claim account stated, and that it will no longer hold itself liable for amounts charged against depositor's account unless notice of irregularities is given within ten days, demand thereafter by depositor claiming that indorsement of payee's name was forged is not required before bringing action.

10. SAME—DENIAL OF LIABILITY WAIVER OF DEMAND.

  Bank officer's denial of bank's responsibility for payment of checks on forged indorsements of payees, and his statements that bank did not owe depositor any money because depositor had been negligent, constituted waiver of demand for payment by depositor before bringing action.

11. SAME—PAYING OUT DEPOSITOR'S MONEY.

  Bank is not warranted in paying out money of its depositor except in strict accordance with his order.

12. SAME—FORGED INDORSEMENTS—NEGLIGENCE OF DEPOSITOR.

  While no amount of care on part of bank in identifying person receiving money will entitle it to charge payment of check on which payee's indorsement has been forged against depositor's account, bank may justify such payment by showing that depositor was negligent in carrying out some duty which he owed bank in such way as to be cause of improper payment.

13. SAME—NEGLIGENCE—ESTOPPEL.

  Estoppel of depositor, on ground of negligence, to recover for unauthorized payment by bank is based on failure of depositor to act as ordinarily prudent business man would act in issuing checks.

14. Same—Forged Indorsements—Estoppel.

Implicit confidence by depositor in honesty and faithfulness of clerk whom there was no reason to suspect of dishonesty, but who was issuing checks to fictitious persons and forging indorsements thereon, is not such conduct as would operate as estoppel of depositor's right to recover from bank.

15. Same—Duty of Depositor to Discover Fraud—Notice.

Depositor may not sit idly by after knowledge has come to him that his funds seem to be disappearing, or that there may be leak in his business, and refrain from taking steps that ordinarily careful and prudent business man would take in such circumstances, and which, if taken, would result in stopping issuance of fraudulent checks.

16. Same—Negligence—Question for Jury.

In depositor's action against bank for money paid out on fraudulent checks issued by trusted employee, on which payees' indorsements were forged, whether depositor was negligent in failing to take such action as ordinarily careful and prudent business man would have taken to prevent issue of such checks, barring its right to recover, *held*, under the circumstances, question for jury.

17. Appeal and Error—Negligence.

Supreme Court may not properly pass upon questions of negligence except when facts are such that all reasonable men would be likely to draw same inferences from them.

18. Banks and Banking—Negligence.

Depositor owes bank duty to use ordinary care in examining returned checks and statement.

19. Same—When Bank Excused by Depositor's Negligence.

Failure by depositor to use ordinary care in examining returned checks and statement is sufficient to excuse payments made by bank after depositor has had reasonable time to discover fraudulent issue of checks by trusted employee, if exercise of due care would have led to discovery thereof.

20. Same—Negligence—Proximate Cause.

Failure by depositor to carefully examine bank statement, check stubs, and returned checks, was not proximate cause of failure to uncover fraud of trusted employee in issuing fraudulent checks which were cashed by forging payees' names, where such examination would not have disclosed either fraud or forgery.

21. SAME—COMPARING RETURNED CHECKS WITH RECORDS IN DE-
POSITOR'S OFFICE NOT REQUIRED.

    Depositor owes no duty to bank to compare returned checks
with records in office except check book or register, and
therefore depositor was not negligent in failing to compare
returned checks with time sheets, although this would have
disclosed forgeries.

22. PLEADING—VARIANCE—BANKS AND BANKING—FORGED INDORSE-
MENTS.

    In depositor's action against bank for money paid out on checks
on which payees' indorsements were forged, where common
counts in declaration with bill of particulars fully make out
cause of action, bank's claim that there was variance between
pleadings and proof is without merit.

Error to Wayne; Sample (George W.), J., pre-
siding. Submitted June 4, 1930. (Docket No. 26,
Calendar No. 34,946.) Decided December 2, 1930.
Rehearing denied January 23, 1931.

Assumpsit by Detroit Piston Ring Company, a
Michigan corporation, against Wayne County &
Home Savings Bank, American State Bank of High-
land Park, and another. From a directed verdict
for plaintiff, defendant American State Bank brings
error. Reversed and new trial granted.

*James G. McHenry* and *Howard C. Chilson,* for
plaintiff.

*Robert M. Brownson* and *Kenneth Murray,* for
defendant American State Bank of Highland Park.

BUTZEL, J. Plaintiff and appellee, Detroit Piston
Ring Company, a Michigan corporation, engaged in
the manufacture of piston rings in the cities of De-
troit and Plymouth, Michigan, deposited its funds
with defendant and appellant, American State Bank
of Highland Park, Michigan. It withdrew them by
checks signed by either John Magee, president, or

Harry Magee, secretary and treasurer. Evidently plaintiff's business prospered with the automobile industry, for it grew very rapidly and kept fairly large bank balances. One Helen Culbert, formerly Helen Eck, a trusted payroll clerk, in whose integrity and ability plaintiff had implicit confidence, entered plaintiff's employ in 1919. One of her duties was to prepare the biweekly payroll. She would do this by consulting the time cards of employees, and then list their names and the amount due each of them on a pay sheet. She would also prepare checks in accordance therewith. These would then be signed by an officer. She also kept the cost accounts. The payroll checks were drawn on a form different from the regular checks used for other purposes. Each payroll check had the words ''pay check'' and also the words ''not over fifty dollars'' or ''not over seventy-five dollars'' as was appropriate in each instance, printed on it.

Commencing June 1, 1922, Helen Culbert, who is also a defendant in this case, inserted the names of former employees who were not entitled to any amount, or else fictitious names, on the payroll and prepared checks to their order. She did that almost continuously during a period of two years and seven months without being discovered. After making out the biweekly checks, which included the fraudulent ones, she presented them to one of the officers of the appellee who signed them without any examination as to their correctness. She would then deliver the checks to the employees entitled to them, but she would keep out those payable to the former employees or the fictitious persons, forge their indorsements, and then have them cashed. Most of them were cashed by her at a neighborhood branch of the Wayne County & Home Savings Bank, two blocks

from the factory. Plaintiff kept no account with this bank. A small portion of them were cashed by her at well-known retail stores in the city of Detroit. The Wayne County & Home Savings Bank branch did not demand her indorsement; the checks were small in amount and appeared to be regular on their face, and were presented by Culbert, a trusted employee of plaintiff. It is apparent from the record that her indorsement would only have had the effect of a written identification of the payees and their signatures. The testimony shows that the forged indorsements were not examined on the return of the canceled checks each month.

The Wayne County & Home Savings Bank was joined as a defendant in this cause, but suit against it was discontinued so that the American State Bank of Highland Park, referred to as the appellant, is the sole defendant, with the exception of Helen Culbert, who makes no defense. Appellant was not a member of the Detroit Clearing House, but received checks from day to day by a messenger of that organization, as was the usual practice. It paid cash for the checks as they were delivered, without any inquiry as to the genuineness of the indorsements, and charged the amounts so paid to appellee's account. From June 1, 1922, until January 8, 1925, defendant Helen Culbert falsified almost every payroll in the manner described. Sometimes a dozen of these spurious checks were issued at a time. She altered plaintiff's cost accounts in order to cover up her fraud. This resulted in increased labor expense of plaintiff's different manufacturing operations. Plaintiff employed auditors to ascertain the reason for the larger cost of production and the failure to make more profit on its large turn-over, but no audit was ever made of the payroll, and thus the irregularities were not discovered.

The company had installed a time clock which registered on a time card, punched by each employee, when he began and left work so that the exact time each employee worked could be ascertained from his time card in an instant. If anyone had compared the pay sheet with the time cards they would have immediately discovered the fraud. Had anyone with knowledge of the employees' names even looked over the payroll sheet, the fraud would likewise have been immediately discovered. As a matter of fact, it was discovered in this manner. Because of a dispute over the amount paid to an employee, the superintendent of the factory had occasion to look at the payroll sheet. At a glance he noticed names of former employees who had not been in the employ of plaintiff for a long period of time. Defendant Culbert was convicted and placed on probation. It was found that some 567 checks were fraudulent.

During the long period in which these false checks were issued and charged up against plaintiff's account by appellant bank, plaintiff on the first of each month received all the canceled checks that the bank had cashed during the previous month; these included the fraudulent checks. Accompanying them would be a statement, together with canceled checks, to its bookkeeper, Edna Schulte, who would compare the balances appearing upon the bank statement with its own books. Sometimes plaintiff's treasurer would assist in doing this. Checks and statement would be called for each month by one C. V. Randall, an employee of plaintiff, who signed and delivered to the bank a receipt as follows:

"Received From AMERICAN STATE BANK, HIGHLAND PARK, MICHIGAN.

"Statement of account of Detroit Piston Rg. Co. and all paid checks, notes, and vouchers as listed on said statements, all of which are hereby accepted as

genuine and correct unless notice to the contrary is received within ten days from date.

"Highland Park, July 6, 1922.

"C. V. RANDALL."

The following words were printed across the face of the statements delivered with the canceled checks each month:

"Please examine this statement upon receipt and report at once if you find any difference so that this bank may know definitely whether their books agree with your own.

"If no error is reported in ten days the account will be considered correct.

"All items are credited subject to final payment."

As the defalcations were not discovered until 1925, the bank was not notified within ten days as provided in the foregoing receipt.

Plaintiff claims that it deposited $28,006.66 with defendant bank for which it is entitled to repayment on the theory that this amount of money was not withdrawn by it, but was improperly charged against its account on account of the fraudulent checks. The court directed a verdict in favor of plaintiff and against defendants in the sum of $33,-942.54, being the aggregate of the checks introduced in evidence, plus interest. Defendant bank in its appeal claims that the court erred in not finding that the action was barred by the statute of limitations (section 8041, 2 Comp. Laws 1915), and that defendant bank was absolved from liability by the receipt given each month by plaintiff's representative as well as by the statement and notice accompanying it, and also in not holding that plaintiff's negligence and conduct had been such as to estop it from asserting the claims against defendant, and,

in any event, in not submitting this latter question for a determination by a jury.

The various claims of error are herewith discussed.

1. Section 8041, 2 Comp. Laws 1915, reads as follows:

"No bank shall be liable to a depositor for the payment by it of a forged or raised check unless within three months after the return to the depositor of the voucher of such payment such depositor shall notify the bank that the check so paid is forged or raised."

This statute was enacted for the purpose of giving the bank prompt notice that a check has been forged or raised. This could be readily discovered by the drawer of the check immediately upon its return to him. He knows his signature better than any one else. He might not know the signature of a payee with whom he was unacquainted, and it might take longer than three months to discover that the check had been indorsed by some one other than the payee. Similar cases have been before the courts in other States, and it has been uniformly held that the statute only applies to facts that necessarily must be within the knowledge of the drawer at the time of the return of the check to him, namely, whether his name has been forged, or the check raised, or the name of the payee changed. It has *not* been applied to the forging of the indorsement of the payee.

In *McCornack* v. *Central State Bank*, 203 Iowa, 833 (211 N. W. 542, 52 A. L. R. 1297), the court said:

"The statute does not, we think, change this rule in respect to the genuineness of the signature of indorsers. The indorsement is no part of the check

as made by the drawer, although it is, of course, contemplated that the payee must indorse it. But, since the maker is not required to know the signature of the payee, and has a right to issue the check payable to the order of one unknown to him, relying on the bank to pay only in accordance with his direction, a forged indorsement does not make the check a 'forged check,' within the meaning of the statute."

To the same effeqt is *Atwell* v. *Mercantile Trust Co.*, 95 Cal. App. 338 (272 Pac. 799).

Appellant relies on a prior California case, *Union Tool Co.* v. *Farmers & Merchants Bank*, 192 Cal. 40 (218 Pac. 424, 28 A. L. R. 1417), in which the statute was held to be applicable. That case was considered by the court in the *Atwell Case* and distinguished on the ground that the name of the payee was altered on each of the checks involved before the indorsement was forged. That is a quite different situation, as a comparison of the face of the check with the stub would have disclosed the forgery to the drawer at once. No knowledge of the payee's signature was necessary.

2. The reasoning in regard to the statute applies with equal force to the defendant's claim that the signing of the receipt and the notice given by the bank discharges defendant from all further claims on the part of plaintiff. Neither the plaintiff nor the defendant knew, at the time the receipt was given each month, that the indorsements of payees' names were not genuine. Nor is there a duty on the part of the drawer to ascertain whether the indorsement of payee's name is genuine or not, for in many instances he may not be familiar with the payee's signature. The most that can be claimed for the receipt and notice is that they have made the state-

ment of the bank an account stated, but this can always be opened upon proof of fraud or mistake. *Shipman* v. *Bank,* 126 N. Y. 318 (27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821); *National Surety Co.* v. *Manhattan Co.,* 252 N. Y. 247 (169 N. E. 392, 67 A. L. R. 1113). Since plaintiff in signing the receipts was in total ignorance of the fraud, it was acting under a mistake of fact, and it should not be bound by the account stated. Knowledge of the fraud cannot be imputed to plaintiff because a subordinate agent, Helen Culbert, knew of it, since she acquired her knowledge while acting in opposition to the interest of her principal. *Shipman* v. *Bank, supra; American Sash & Door Co.* v. *Commerce Trust Co.* (Missouri), 25 S. W. (2d) 545; *United Workmen* v. *Bank,* 92 Kan. 876 (142 Pac. 974, L. R. A. 1915B, 815).

3. Further objection is made that no demand was made on defendant bank by plaintiff for the return of the sums which were paid out and charged to plaintiff's account before this action was begun. It is elementary that the relation between banker and depositor is that of debtor and creditor. While, as a rule, there is no default on the part of the debtor until the creditor has made a demand, a denial of liability by the debtor makes a demand unnecessary. In the case of banker and depositor, statements are rendered by the bank for the purpose of showing that the bank will claim that there was an account stated, and that it will no longer hold itself liable for the amounts charged against the depositor's account, unless notice of any irregularities is given within ten days. We believe that a demand is not required after such a denial of liability. *Masonic Benefit Association* v. *First State Bank,* 99 Miss. 610 (55 South. 408). In the case of *Union Tool Co.*

v. *Farmers & Merchants Bank, supra,* the court said:

"A demand is ordinarily necessary because until it is made and refused there is no denial by the bank of its liability to pay, and no default out of which a cause of action could arise. Where, however, the bank either in terms or in effect has denied liability to the depositor for the amount in question this is an 'act on the part of the bank dispensing with such demand,' the cause of action accrues, and the statute of limitations, where one is applicable, is set in motion.  *  *  *  The submission of a check as a voucher and of a statement in which its amount is charged to the depositor's account is notice to him that the bank treats that check as the basis of a valid charge to his account; that it has charged it to that account, and, of course, that it no longer holds itself liable to him for the amount so charged. It is a denial of liability for the amount paid out on the check, and we cannot doubt that it sets in motion the period of limitations."

Furthermore, in the present instance, Mr. Wallace, the vice president of the defendant bank, testified to a conversation with the treasurer of the plaintiff, in which he said:

"The thought in the conversation, in his remarks and in my answers, always was that we were not responsible in any way."

The testimony further shows that Mr. Wallace said on various occasions that the bank did not owe plaintiff any money because plaintiff had been negligent. We believe that these facts constitute a waiver of demand.

4. The difficult question in this case, one on which the authorities do not agree, is whether the question

of plaintiff's negligence in issuing the checks should have been submitted to the jury. The trial judge in directing a verdict for the plaintiff held that the negligence of the plaintiff, if it was negligent on these facts, was no bar to the action.

It is a well-settled rule that a bank is not warranted in paying out the money of its depositor except in strict accordance with his order. If payment is made on a check on which the indorsement of the payee is forged, no amount of care on the part of the bank in identifying the person receiving payment, or in examining the indorsement, will entitle it to charge the payment against the account of the depositor. The bank may justify such payment, however, by showing that the depositor was negligent in carrying out some duty which it owed the bank, in such a way as to be the cause of the improper payment. *Erickson Co.* v. *Iowa National Bank* (Iowa, 1930), 230 N. W. 342; *American Sash & Door Co.* v. *Commerce Trust Co., supra; Union Tool Co.* v. *Farmers & Merchants Bank, supra; National Surety Co.* v. *Manhattan Co., supra.*

At the beginning of the period during which the fraudulent checks were issued, the only negligence on the part of the company consisted in the failure of its officers to make a thorough check of the payroll. Each time the pay checks were issued, the officer signing them would compare the checks with the payroll, but at no time was a complete investigation made, *i. e.,* a comparison of the checks with the time cards, nor was an audit of the payroll ever made. It is perfectly clear that a complete investigation would have disclosed the fraud at once.

Whether these facts constitute such negligence as to bar the plaintiff is a disputed question. In *Los Angeles Investment Co.* v. *Home Savings Bank,*

180 Cal. 601 (182 Pac. 293, 5 A. L. R. 1193), the court
held that the plaintiff might recover.   Emory, head
of a department of plaintiff, filled up checks made
out to fictitious persons; these were signed by offi-
cers of the company on the representation that they
were in payment of accounts due.   Emory then,
cashed the checks after forging the indorsements.
The court said:

"Complaint is chiefly made that the company re-
lied upon the honesty of its heads of departments
and the regularity on their face of the demands or
requisitions which such heads approved, and made
no investigation to determine whether such demands
were fraudulent or not.   But trust must be placed
in someone,   *   *   *   and necessarily in heads of
departments.   If trusting them in regard to de-
mands for checks for disbursements regular upon
their face is negligence, so it would be negligence to
trust them in a hundred other ways in which it is
within their power to defraud their employer.   Busi-
ness could not be conducted on any such basis.   It
is impossible for any large concern to investigate
minutely in advance every demand for disbursement
necessary for it to make in its daily business.   The
delay and expense of so doing would be too great.

"But however this may be, even if the company
were guilty of negligence in signing the checks up-
on the fraudulent demands of Emory, it is plain that
such negligence did not contribute to or induce the
acceptance by the banks of the forged indorsements.
The forgery of the indorsements was entirely dis-
tinct from the issuance of the checks on false de-
mands, and there was no relation between them.
This is clearly shown by the fact that Emory could
just as easily have forged indorsements on and
secured the payment of checks issued on genuine
demands, and in fact did so in one instance."

The same conclusion was reached in *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397 (87 N. E. 740, 22 L. R. A. [N. S.] 250), which arose on similar facts.

*Erickson Co.* v. *Iowa National Bank, supra,* is a case which takes the contrary view. The facts are almost identical to those of the present case. The court concluded that the question of the negligence of the plaintiff should have gone to the jury, basing its decision on the theory that the pay checks carried a representation that the payees named were genuine, which the bank was entitled to rely upon. The court said:

"It was a material misrepresentation, though not knowingly made as such. The drawee-bank was under the duty of knowing that the indorsement was genuine. In response to that duty, it exercised some degree of care to ascertain that fact. The greater the degree of care, the greater the protection afforded to itself. If the representation made by Bridges to the effect that the payee of the check was a present employee was fairly sufficient to satisfy the drawee-bank of the genuineness of the indorsement, and if it relied thereon in the paying of the check, then negligence on the part of Bridges in making the representation without knowing its truth or falsity would operate as a defense herein. If the drawee-bank in paying the check reasonably believed that the payee was a present employee, it might also reasonably believe that the indorsement was genuine. In such event the plaintiff would be chargeable with negligence in inducing the belief."

See *Kaszab* v. *Greenebaum Sons Bank & Trust Co.,* 252 Ill. App. 107, for a similar decision.

The bank's duty to the depositor requires it to ascertain the truth in making a payment or take the consequences. The bank may protect itself by de-

manding identification and appropriate guaranties before accepting a check. The estoppel of the depositor, on the ground of negligence, to recover for an unauthorized payment, is based on the failure of the depositor to act as a prudent business man in issuing his checks. In the present instance, during the first months, plaintiff's officers did but one thing of which complaint can be made. They relied implicitly upon the honesty and faithfulness of a clerk, whom they had no reason to suspect of dishonesty, while the means of checking the accuracy of her work were readily available. After a study of the foregoing authorities, while recognizing a conflict in them, we do not think this is the sort of conduct that should operate as an estoppel of the plaintiff.

A depositor may not sit idly by, however, after knowledge has come to him that his funds seem to be disappearing, or that there may be a leak in his business, and refrain from taking the steps that a careful and prudent business man would take in such circumstances, and which, if taken, would result in stopping the issuance of fraudulent checks. If he fails to take such step, the facts may establish his negligence in the eyes of a jury, and in that event he would be precluded from recovering against the bank. At some time during the period of the defalcations, in the present case, the officers of the plaintiff had a fact brought to their attention which should have given them notice that something was amiss in their accounting system. This was the fact that the cost of production of their piston rings became noticeably higher, so that it became very difficult to secure orders. When this was first realized, the officers had a check made of their accounting system, but it was a superficial one, for the accountants did not make an audit of the payroll. Just

when, if at all, sufficient knowledge was brought home to them to have caused a prudent business man to carefully check his expenditures, and whether they exercised due care in their attempt to discover possible leaks in their business, are questions for the jury.   The judgment must be reversed, and a new trial granted; this court can not properly pass upon questions of negligence except when the facts are such that all reasonable men would be likely to draw the same inferences from them.   *Snyder* v. *King*, 199 Mich. 345 (1 A. L. R. 893).   *American Surety Co.* v. *Empire Trust Co.*, 228 App. Div. 572 (240 N. Y. Supp. 164), is a very recent case which supports our conclusion, although but one check was involved.

The case of *Harmon* v. *Old Detroit National Bank*, 153 Mich. 73 (126 Am. St. Rep. 467, 17 L. R. A. [N. S.] 514), which appellee stresses in its brief, is entirely in accord with our conclusions as to the bank's liability for the first checks it honored.   In the *Harmon Case* there was but one check involved.   There was not a continuity of spurious checks issued with regularity over a term of years during a part of which time the fact was brought home to the plaintiff that there was something wrong with its business.

It was argued that plaintiff was negligent in another respect, in failing to use due care in its examination of the canceled checks and statement which were delivered to it each month.   It was the practice of the bookkeeper simply to compare the bank balance with plaintiff's balance; the difference was determined and a list made of the outstanding checks.

The courts are agreed that a depositor owes his bank the duty to use ordinary care in examining the

returned checks and statement. A failure to carry out this duty is sufficient to excuse all payments by the bank made after the depositor has had a reasonable time to discover the fraudulent scheme and notify the bank, provided that the exercise of due care would have led to a discovery of the forgeries. *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96 (6 Sup. Ct. 657); *Union Tool Co.* v. *Farmers & Merchants Bank, supra.* All courts in this country are agreed that the depositor should carefully examine the bank statement, the check stubs, and the returned checks. It is evident that this was not done in the present case, but it is also clear that even if appellee had done this it would not have discovered the fraud, because no discrepancy would have been found. The failure to compare the returned checks with the bank statement and the check stubs was not the proximate cause of the failure to uncover the fraud. *John G. Paton Co.* v. *Guaranty Trust Co.*, 227 App. Div. 545 (238 N. Y. Supp. 362).

It was also argued that plaintiff was negligent in failing to compare the returned checks with the employment cards or the time cards. This would have disclosed the forgeries, but we do not believe the depositor has a duty to compare his returned checks with any of the records of his office except his check book or register. *John G. Paton Co.* v. *Guaranty Trust Co., supra; American Sash & Door Co.* v. *Commerce Trust Co., supra.* After knowledge of the increased cost of production came to the officers of the company, due care might have required such comparisons, but this is a question which must be considered on the new trial.

5. Finally, appellant insists that there was a variance between the pleadings and proof, and that the court was in error in directing a verdict for the amount represented by the entire number of checks,

567.  It is said that this suit was commenced and tried on the theory that the Wayne County & Home Savings Bank guaranteed the indorsements on the checks, and that the proof shows that the indorsement of the Wayne County Bank appears on only 489 of the checks.

Plaintiff's declaration contained the common counts, and, in addition, a count briefly setting out the facts.  This allegation appears in the latter:

"that the defendant, Wayne County & Home Savings Bank, guaranteed the indorsements on said checks."

Attached to the declaration, however, were copies of all the checks, 567, which were introduced at the trial.  Counsel for appellant objected at first to the introduction of the checks not indorsed by the Wayne County Bank, but after it was explained by appellee that this was a suit for money had and received, and that the checks were introduced as the most convenient method of computing the amount due, no further objection was made, and the trial proceeded.  The gravamen of the action is that the appellant paid out sums which it was not authorized to pay.  It did, in fact, rely on the indorsement of the Wayne County Bank in certain instances, but that is merely incidental.  The case was discontinued as to the Wayne County & Home Savings Bank, and continued against appellant.  The common counts in the declaration with the bill of particulars fully make out a cause of action.

The judgment must be reversed, with costs to appellant, and a new trial granted.

WIEST, C. J., and McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.  CLARK and POTTER, JJ., concurred in the result.